# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 5967 | DATE | 10/2/2001 |
| CASE TITLE | KEVIN BOCK vs. COMPUTER ASSOCIATES INTERNATIONAL, INC. and PLATINUM TECHNOLOGY, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Bock's motion to clarify and enter judgment on remand [105-1] is granted. Judgment is entered for plaintiff Kevin Bock and against defendants Computer Associates and Platinum Technology in the amount of $1,276,398.75, plus reasonable attorneys' fees and prejudgment interest at the daily prime rate plus 2%. Defendants' motion for judgment [111-1] is denied. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | 10-4-01 date docketed | 115 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | FILED FOR DOCKETING | |
| | Copy to judge/magistrate judge. | 01 OCT -5 PM 5: 14 | |
| SB | courtroom deputy's initials | 10/2/2001 date mailed notice | |
| | | CB mailing deputy initials | |
| | | Date/time received in central Clerk's Office | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN BOCK | ) | |
| | ) | |
| Plaintiff, | ) | No. 99 C 5967 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| COMPUTER ASSOCIATES INTERNATIONAL, INC. and PLATINUM TECHNOLOGY, INC. | ) ) ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED OCT 09 2001

## MEMORANDUM OPINION AND ORDER

Kevin Bock sued Computer Associates International, Inc. ("Computer Associates") and Platinum Technology, Inc. ("Platinum") (collectively "defendants") for breach of a severance agreement under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Following a bench trial, the court entered judgment for Bock in the amount of $1,646,428.00 with interest and reasonable attorneys' fees. On appeal, the case was remanded for additional findings of fact. *Bock v. Computer Assoc. Int'l, Inc. et al*, 257 F.3d 700 (7th Cir. 2001). Bock and defendants now move to clarify this court's prior ruling, and enter judgment in their favor.

## BACKGROUND

### A. The Facts

The Seventh Circuit chose not to disturb this court's prior findings of fact. *Bock*, 257 F.3d at 709. Accordingly, all relevant facts are taken from the previous findings unless otherwise noted.

1

115

Tr. at 372-386. Platinum and Computer Associates are businesses that service computer networks and sell software. Platinum employed Bock as a salesperson from 1995 through 1999. During that time, Bock repeatedly surpassed his sales quotas and was ultimately promoted to the executive position of senior vice president of sales. His compensation plan with Platinum consisted of a base salary plus commissions; he did not receive a yearly bonus. Bock's salary for 1999 was $145,000, and his commission from completed sales for 1998 was $674,333. Bock testified that in 1998, he was credited with $367 million in revenue for the company. In 1998, Platinum set up a severance pay program for its executives. An important purpose of the plan was to keep key employees from leaving Platinum in the face of rumors of a corporate takeover. Under the severance agreement, an employee would receive severance benefits if his employment was terminated without good cause within two years of a corporate buyout. Larry Freedman, Platinum's general counsel, submitted the severance agreement to employees for their acceptance and signature. The severance agreement provided that employees would receive aggregate severance pay consisting of a bonus amount added to twice the sum of their highest base salary plus their highest 12-month amount of incentive compensation. Bonus amount was defined as the remaining portion of an employee's expected yearly bonus. Incentive compensation was undefined. Before signing the agreement, Bock called Freedman and inquired whether commissions were included. Freedman assured him he was "covered." Tr. at 384. In addition, Bock told Freedman he would change his compensation plan to include bonuses instead of commissions if the latter were excluded. Freedman responded it was unnecessary. Bock signed the agreement in September 1998.

On March 30, 1999, Computer Associates announced its intent to acquire Platinum. At trial, it was undisputed Computer Associates terminated Bock's employment without good cause after the

takeover. Furthermore, both parties agreed Bock was entitled to compensation under the severance agreement. The extent of the compensation was in dispute. Bock claimed he was led to believe commissions were included in the severance payment plan. A few days after the acquisition was announced, Bock contacted Tom Slowey, Platinum's vice-president of sales and Bock's supervisor, inquiring about the amount of his severance payout under the agreement. Slowey told Bock he would get back to him. But Slowey commented Bock would do well under the severance agreement because he had a "great couple of years" Tr. at 376. In May 1999, Freedman informed Bock if Platinum terminated his employment, his severance pay would be $290,000, twice Bock's annual salary base and bonus but nothing for his commissions. Bock was not satisfied with this conversation and called Slowey again for clarification. Later that day, Freedman left a phone message for Bock informing him the severance payout would be calculated using base salary and bonus, not commissions. Bock then contacted Andrew Filipowski, Platinum's chairman and CEO, who told him "it should include commissions and all of that" and stated he would check into it. Tr. at 377. Filipowski later left a message for Bock stating Freedman had informed him commissions were not included in the severance calculation. On May 15, 1999, Freedman sent Bock an e-mail that stated Platinum never intended the term "incentive compensation" to include commissions.

On June 7, 1999, Computer Associates terminated Bock's employment. On June 28, 1999, Bock received correspondence from Computer Associates stating he was entitled to a payout period of 24 months and a total payout of $290,000. His commissions were not included. Bock sued Computer Associates and Platinum to recover commission income under the severance agreement. He contended the agreement unambiguously entitled him to severance pay equal to two times his base salary and commissions. The parties agreed the severance agreement constituted an employee

3

welfare benefits plan regulated by ERISA. In addition, Bock claimed Platinum was estopped to deny him additional severance pay based on Platinum's oral representations that commissions were included in the severance pay calculation.

**B.     The Court's Findings**

This court found the term "incentive compensation" ambiguous. The court determined Platinum's board of directors, in adopting the severance plan, did not intend to include commission income in the incentive compensation portion of the severance agreement. However, the court found Bock's interpretation of incentive compensation to include commissions reasonable. At trial, the evidence showed Platinum's decision to exclude commissions was not sufficiently communicated to affected employees. Indeed, the court determined Platinum, and Mr. Friedman in particular, deliberately failed to disclose Platinum's decision to exclude commission income from severance pay calculations. The purpose was to retain highly productive employees such as Bock amid rumors of a takeover. In addition to assurances by Freedman, Slowey, and Filipowski, the court relied on Friedman's statement to Ralph Manno, a similarly situated employee. Friedman told Manno, "you're covered," in response to a question about whether his commissions were included in the severance plan. Manno was thereafter denied commission income in the severance payout. Finally, the court found probative Friedman's discouragement of Bock's attempt to reclassify his commissions as bonus income.

Combined with other testimonial and documentary evidence, the court concluded Platinum had breached the severance agreement and its fiduciary obligation of full disclosure under ERISA. Additionally, the court held defendants were estopped from denying payment of severance benefits that included commissions. Bock was awarded $1,909,550.97, which included base salary,

commission income, pre-judgment interest, attorneys' fees, and costs.

## C. The Seventh Circuit's decision

The Seventh Circuit disagreed with this court's conclusion that the term "incentive compensation" was ambiguous within the four corners of the severance plan. *Bock*, 257 F.3d at 706. The appellate court found the plain meaning of incentive compensation included commissions, but the term was ambiguous because of extrinsic evidence. Under the doctrine of extrinsic ambiguity, the appellate court determined a summary document submitted with the severance plan supported Platinum's position that incentive compensation meant bonus only. *Id.* at 708. The appellate court concluded that had Bock read the summary, he could have known of Platinum's intent. That fact could preclude Bock from claiming ambiguity through extrinsic evidence. Thus, the Seventh Circuit instructed this court to make additional findings of fact on the following question: "[D]id Bock know, or have reason to know, that Platinum intended to exclude commissions?" *Id.*

In addition, the Seventh Circuit requested additional findings of fact on whether Bock detrimentally relied on Platinum's assurances. The Seventh Circuit found Bock's argument that he continued his employment at Platinum despite the risk of termination unconvincing.

## DISCUSSION

### I. Breach of Severance Agreement and Fiduciary Duty under ERISA

The Seventh Circuit asked this court to resolve the following question: Did Bock know or have reason to know of Platinum's intent that commissions were excluded in the severance agreement? After reviewing the record and the previous findings of fact, the court answers this question in the negative.

At the outset, the court relies on its previous finding that Platinum affirmatively misled Bock

5

about the nature of severance compensation. Tr. at 384. Freedman told Bock, "you're covered," in response to Bock's concerns over whether commissions were included. Freedman went further by discouraging Bock from changing his payment plan to include bonuses instead of commissions. Filipowski and Slowey each initially affirmed Bock's belief that commissions were included. This court concluded Platinum's failure to disclose that commissions were excluded was "by design in order to retain valuable employees who were producing multimillion dollars in revenue for Plaintiff." Tr. at 381. The finding that Platinum misled Bock is instructive. Logically, Bock could not have known Platinum's intent to exclude commissions because Platinum affirmatively misled Bock into believing commissions were included.

This conclusion is bolstered by Bock's testimony at trial. Bock testified when he signed the severance agreement he understood "incentive compensation" to include commissions. The court found this testimony credible and probative of Bock's knowledge. Tr. at 383. Accordingly, the court gave Bock's testimony substantial weight. Furthermore, the court found Platinum failed to disclose its intent until Friedman's e-mail, which stated commissions were excluded. Tr. at 382. The only reasonable conclusion is that Bock did not know of Platinum's undisclosed interpretation of incentive compensation until after Bock signed the severance agreement and the takeover was announced.

Manno's testimony that Platinum misled him is relevant. Because Platinum misled another similarly situated employee about the scope of its severance plan, Bock had even less reason to know of Platinum's true intent. In response to Manno's concerns about the severance agreement, Freedman also responded, "you're covered." Freedman repeated this assurance to Manno in April 1999. Tr. at 378. But later that month, Freedman abruptly admitted to Manno his prior comment was

6

incorrect. Tr. at 379. This court found Manno's testimony credible. Freedman's comments to Manno are probative of Platinum's vague and repeatedly misleading position about inclusion of commission income in its severance plan. There was no evidentiary basis to support a reasonable inference that Bock knew of Platinum's intent to exclude commission income.

Finally, the court found Bock's understanding that commissions were included reasonable because of the manner in which Platinum reported his income to the Internal Revenue Service. Tr. at 383. His W-2 forms did not distinguish between base pay and commissions. Again, if Platinum had made no distinction in the past on his compensation, that fact makes it even less likely that Bock had reason to know Platinum's later self-serving intent to exclude commissions as part of his severance compensation plan.

The Seventh Circuit found the summary submitted with the severance agreement supported Platinum's argument that commissions were excluded.[1] *Bock*, 257 F.3d at 708. Thus, the court concluded if Bock had read the summary plan, that fact was probative of Bock's knowledge of Platinum's intent. Bock asserts there is no evidence in the record he read the summary plan prior to signing the Agreement. Bock is correct. At trial, Bock testified he did not recall reading the summary plan. Tr. at 293. While Bock acknowledged he understood the summary to exclude commissions, that statement was made in response to a question on cross-examination as to whether he understood the summary *at trial*. Bock's knowledge of Platinum's intent at the time of trial is

---

[1] The summary states, in relevant part: "The payout period for the salary component of the severance benefit program is ... calculated using the sum of a base salary and bonus (in addition to making up lost bonus opportunity). The amount of base salary and bonus is determined based on the maximum amount paid to the executive during any trailing 12 month period during the 36 months prior to the termination of employment."

7

irrelevant as to his knowledge when he signed the agreement.

In addition, the Seventh Circuit recognized Bock was under no duty to read the summary. *Bock*, 257 F.3d at 709. Accordingly, Bock cannot be charged with constructive knowledge solely because Platinum furnished the summary. *Id.* Nor have defendants offered any additional evidence Bock read the summary. Relying on the record, defendants argue Bock must have read the summary and its text because he called Friedman to inquire if commissions were included. Defendants further contend Bock called Friedman because Friedman was the contact person on a cover memorandum in the severance package. The memorandum indicated a summary was included with the severance agreement. Defendants conclude Bock must have read the summary. The conclusion that Bock must have read the summary simply because he called Friedman is speculative. Friedman's name was stamped on the severance agreement itself. *See* Def. Mot for Judgment, Ex. 2. Defendants' inference that the summary prompted Bock's call to Friedman is mere conjecture. Inferences must be reasonable and have some rational support in the record. Moreover, even if Bock read the summary, Platinum's subsequent misleading comments undercut a finding that Bock knew Platinum's true intent when he signed the severance agreement.

The Seventh Circuit referred to evidence of Bock's questioning of several Platinum supervisors as potentially probative of Bock's knowledge of Platinum's intent. *Id.* at 710. However, absent additional evidence, "it would be inequitable to regard an employee's simple search for reassurance as a sufficient basis for concluding he shared his employer's intent." *Id.* The record is barren of evidence to bolster the use of Bock's questions as a basis to conclude he knew Platinum's true intent. In fact, Bock's questions to Freedman, Slowey, and Filipowski are probative of the opposite conclusion – that Bock did not know or have any reason to know of Platinum's intent.

Bock's questions were an attempt at reassurance and clarification. Bock's questions reasonably demonstrate his uncertainty about the definition of incentive compensation. Bock did not know or have reason to know of Platinum's intent. Bock's testimony at trial is probative of this conclusion:

> Q: Why did you call Larry Freedman?
>
> Bock: Couple of things. One, I wanted to make sure I really understood, you know, the terms of this agreement; and, secondly, I wanted to thank him for the agreement.

Tr. at 234.

Bock's uncertainty was put to rest by Friedman's comments assuring Bock he was covered. In addition, Bock's conversations with Filipowski and Slowey provide no assistance to defendants. Those individuals bolstered Bock's conclusion that commissions were included in the severance package. Tr. at 382-383. Thus, Bock's questions to his supervisors cannot support a reasonable inference Bock knew or had reason to know of Platinum's intent.

Freedman, Slowey, and Filipowski's confusing and misleading responses are even more egregious in light of Platinum's affirmative duty of disclosure under ERISA. Fiduciaries breach their duty "if they mislead plan participants or misrepresent the terms or administration of a plan." *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 590 (7th Cir. 2000). Fiduciaries must communicate material facts affecting the plan participants or beneficiaries whether or not they ask for information. *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993). Defendants did not satisfy these fiduciary obligations. In fact, Freedman had numerous opportunities to clarify Bock's understanding (or rather, misunderstanding) that commissions were included. Instead, Freedman reinforced Bock's belief that commissions were included in the severance plan.

9

Accordingly, the court finds Bock did not know or have reason to know of Platinum's intent. Having answered the Seventh Circuit's question in the negative, the court reaffirms its finding Platinum breached the severance agreement and its fiduciary duty under ERISA.

## II. Bock's Detrimental Reliance

In demonstrating an ERISA estoppel claim, Bock is required to show "(1) a knowing misrepresentation; (2) made in writing; (3) with reasonable reliance on that misrepresentation ... (4) to [Bock's] detriment." *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir. 1999). The Seventh Circuit asked this court to determine if Bock detrimentally relied on Platinum's assurances. *Bock*, 257 F.3d at 711. The appellate court found detrimental reliance required more than Bock's continued employment at Platinum despite the risk of termination. Detrimental reliance mandates a showing of economic harm. *Id.* (citing *Shields v. Local 705, Int'l Brotherhood of Teamsters*, 188 F.3d 895 (7th Cir. 1999)).

The record conclusively establishes Bock detrimentally relied on Platinum's assurances. Bock relied upon Freedman's comments that it was unnecessary for him to change his compensation plan to include bonuses instead of commissions. Tr. at 383. The court found Bock's testimony that Freedman told him "Hey, there is no need to do this" credible. Tr. at 383. In relying on that statement, Bock received $290,000 from Platinum in severance pay that excluded commissions. It is undisputed Bock's severance pay would have substantially exceeded $290,000 if commissions were included in his severance package. Tr. at 383. Notably, Bock's suggestion that he change his compensation plan occurred before he signed the agreement. Thus, Bock abandoned actions to protect himself and his future income stream because of Freedman's assurances. *See Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 455-56 (3d Cir. 2000); *C.F. Arrowhead Services v. Amcec*

*Corp.*, 614 F. Supp. 1384, 1388 (N.D. Ill. 1985); *Vajda v. Arthur Andersen & Co.*, 253 Ill. App. 3d 345, 624 N.E.2d 1343, (1st Dist. 1993). In addition, Bock testified he did not seek another job even though his 1999 compensation plan was the worst he ever received. Tr. at 240. Bock felt secure and protected by the severance agreement that memorialized his future earnings potential. Tr. at 239-241. As a result, Bock relied on Freedman's assurances to his detriment. He suffered economic harm of approximately $1.6 million dollars. Tr. at 385. Because the Seventh Circuit remanded on this element of estoppel only, the court reaffirms its prior conclusions that Platinum is estopped from denying Bock commission compensation.

### III. Prejudgment interest

This court's amended final judgment order awarded Bock $1,909,550.97, consisting of (1) $1,549,288.75 (the June 7, 1999 present value of $1,646,428.00); (2) $195,104.27 in prejudgment interest calculated at the prime rate plus 2% from June 7, 1999 to August 11, 2000; and (3) $165,157.95 in attorneys' fees and costs through June 29, 2000. On remand, the incentive compensation component of the severance package ($1,276,398.75) remains in dispute; defendants have satisfied the additional amounts pursuant to a settlement agreement. Pl. Mot for Judgment at 13; Ex. 5-6.

Bock seeks prejudgment interest on $1,276,398.75 from June 29, 2000 to the present. This court previously awarded prejudgment interest through August 11, 1999 only. "Where a prior judgment awarding damages has been vacated pursuant to the actions of an ultimately losing party," prejudgment interest should be calculated through the date of judgment on remand. *AT&T Co. v. United Computer Sys.*, 98 F.3d 1206, 1209 (9th Cir. 1996); *see also Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("where the first judgment is vacated because it ... requires further factual

development, the vacated award should have been treated as nullity and post-judgment interest therefore accrues from the entry of judgment on remand."); *Cement Division, Nat'l Gymsum v. City of Milwaukee*, 950 F. Supp. 904 (E.D. Wis. 1996) (awarding prejudgment interest from date of judgment after remand), *aff'd* 144 F.3d 1111 (7th Cir. 1997). Because defendants have failed to prevail on remand, pre-judgment interest should be awarded from the date of entry of final judgment to compensate Bock for the time-value of money. *Medcom Holding Co. v. Baxter Travelnol Lab, Inc.*, 200 F.3d 150 (7th Cir. 1996). Accordingly, prejudgment interest is awarded at the daily prime rate plus 2% from June 7, 1999 to the date of entry of this judgment.

Defendants contend this court incorrectly used June 7, 1999, the date of Bock's termination, as the starting date for calculating prejudgment interest. Instead, defendants claim July 7, 1999 is the appropriate date, when Bock would have received his severance payment from Platinum. Defendants failed to object to the June 7, 1999 date in its motion to amend the final judgment order. *See Bock v. Computer Assoc, et al*, No. 99 C 5967, 2000 WL 1053974 (N.D. Ill. July 31, 2000). Defendants did not object when this court entered the amended final judgment order. Nor did defendants raise this issue on appeal. "If a final judgment had been entered, the case appealed, the judgment reversed, and the case remanded, the trial judge would be required to adhere on remand to the rulings that he had made before the case was first appealed, provided of course that they had not been set aside by the appellate court." *Williams v. C.I.R.*, 1 F.3d 502, 503 (7th Cir. 1993); *Heller Int'l Corp. v. Sharp*, 839 F. Supp. 1297 (N.D. Ill. 1993). In any event, defendants' contention is without merit. Prejudgment interest compensates Bock for the time-value of money. *Medcom*, 200 F.3d at 519. Bock was entitled to severance pay from the date he was terminated. *See* Def. Mot for Judgment, Ex. 2 at ¶ 1.b. ("Payout Period: A period of 24 months from the effective date of the

termination of Executive's employment with the Company.") The date when defendants actually delivered the check to Bock is irrelevant for awarding pre-judgment interest.

Finally, Bock seeks additional attorneys' fees and costs from June 29, 2000 to the present with interest. The parties have agreed Bock should proceed under Local Rule 54.3. Accordingly, Bock may submit his request for additional attorneys' fees and costs with supporting documentation pursuant to Local Rule 54.3.

## CONCLUSION

Bock's motion to clarify and enter judgment in his favor is granted. Bock is awarded $1,276,398.75 with reasonable attorneys' fees and prejudgment interest at the daily prime rate plus 2%. Defendants' motion for judgment is denied.

October 1, 2001

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge