# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5967 | **DATE** | 4/3/2002 |
| **CASE TITLE** | Bock vs. Computer Assoc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's motion for attorney fees [126-1] and costs pursuant to Local Rule 54.3 [126-2] is granted in part and denied in part. All matters relating to the referral of this action having been concluded, the referral is closed and the case is returned to the assigned judge. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | 141 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 4/3/2002 | |
| | | date mailed notice | |
| KF courtroom deputy's initials | | KF | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

KEVIN BOCK, )
)
    Plaintiff, )
) No. 99 C 5967
v. )
) Judge Conlon
COMPUTER ASSOCIATES INTERNATIONAL, ) Mag. Judge Mason
INC., and PLATINUM TECHNOLOGY, INC., )
)
    Defendants )

## MEMORANDUM OPINION AND ORDER

Before us is a petition for attorneys' fees filed by plaintiff Kevin Bock. Bock sued his former employers, Computer Associates International, Inc. and Platinum Technologies, Inc. (collectively, "CAI") for violating the terms of his severance agreement. After a bench trial, the District Court found in Bock's favor and awarded him $1,909,550.97, which included benefits he had been denied, pre-judgment interest and attorneys' fees and costs. On appeal, the Seventh Circuit remanded for additional findings of fact, after which the District Court again found in favor of Bock.[1] The parties have already come to an agreement regarding attorneys' fees for all amounts up to June, 2000. Bock claims that since that time, he has incurred approximately $200,000 more in attorneys' fees, costs, and pre-judgment interest. After reviewing the parties submissions, we find that all but $3,474.75 of Bock's requested fees are reasonable under his severance agreement and thus award him a total of $230,203.02 in attorneys' fees, costs, and pre-judgment interest through

---

[1] The District Court's final award to Bock was $1,276,389.75, plus pre-judgment interest and attorneys' fees and costs.

April 3, 2002.

**Background**

The relevant facts of the underlying case are set forth in the Seventh Circuit's opinion, *Bock v. Computer Associates International, Inc. and Platinum Technology, Inc.*, 257 F.3d 700 (7th Cir. 2001). However, because a large part of our decision here rests on the reasonableness of the attorneys' fees and costs that Bock has incurred prosecuting this case, a summary of the facts and procedural history is necessary. Bock was a successful salesman of computer software for Platinum Technologies, earning a base salary of $145,000 and sales-based commissions of nearly $700,000 per year, when his employer requested that he sign a severance agreement ("Agreement") governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et.seq.* (ERISA). The Agreement provided that if Bock was terminated without cause within two years of a corporate buyout, he would receive twice the sum of his highest base salary (the "base salary component") plus his highest 12-month amount of incentive compensation (the "incentive compensation component") as severance.[2] After Computer Associates bought Platinum, it terminated Bock, offering him a total of $290,000 as severance (two times his base salary).

Bock sued CAI, arguing that the term "incentive compensation" in the Agreement included his yearly commissions. He filed a motion for summary judgment, which the

---

[2] The Agreement also provided for a "bonus amount" to be added to the severance amount; since Bock did not receive a yearly bonus, this provision was not applicable.

District Court granted in part[3] and denied in part, finding that the term "incentive compensation", undefined in the Agreement, was ambiguous because both Bock's interpretation and CAI's interpretation were reasonable. During the bench trial, the District Court agreed with defendants that the term "incentive compensation" did not include commissions, but found that the company breached its fiduciary duty under ERISA by not effectively communicating that decision to Bock before he signed the Agreement. Thus, CAI was estopped from denying Bock additional severance based on his yearly commissions.

On appeal, the Seventh Circuit found that the correct way to determine the meaning of the term "incentive compensation" was to use general principles of contract interpretation and not to rely on the intent of the settlor of the plan, as one would for other types of ERISA actions, such as those brought under 29 U.S.C. 1132(a)(1)(B) challenging benefit eligibility determinations. Using general contract principles, the Seventh Circuit found that there remained a question of fact about whether Bock knew that CAI intended to exclude commissions from the term "incentive compensation," and thus remanded the case. On remand, the District Court found that in fact Bock did not know or have reason to know that commissions were excluded from incentive compensation so it again found in his favor.

---

[3] The District Court granted summary judgment as to the base salary component of Bock's claim, finding that apart from any incentive compensation, CAI did in fact owe him $290,000.

3

**Attorneys' Fees Issue**

The Agreement Bock signed included a section regarding the payment of attorneys' fees: "Executive shall be entitled to recover any expenses for attorney's fees and disbursements incurred by him in connection with enforcing his rights under the Agreement whether or not Executive is successful in asserting such rights. . . Amounts payable to Executive hereunder which are not paid when due to be paid shall bear interest from their due date at the prime rate of interest published from time to time in the Midwest edition of the Wall Street Journal plus two percent (2%)." The parties have previously agreed to settle Bock's claims for attorneys' fees which accrued up until June 30, 2000 for a total of $160,000. Thus, the question for us to decide is whether Bock is entitled under the terms of the Agreement to have CAI pay the nearly $235,000 in additional attorneys' fees, costs and pre-judgment interest that has accrued since then.

Bock argues that his entitlement to attorneys' fees and costs is simply a question of contract law; the Agreement says he is entitled to have CAI pay his fees, and thus it should do so. Furthermore, Bock argues that the fees are reasonable, especially because it was the actions of the defendants, such as their refusal for a time to pay even the base salary component of his severance, that drove up his attorneys' fees.

Defendants, while not disputing that the Agreement obligates them to pay Bock's attorneys' fees, argue that the amount claimed by Bock – nearly $200,000 for work done between June, 2000 and December, 2001[4] – is unreasonable. They argue that because

---

[4] Subsequent to filing his original motion for fees, Bock submitted additional invoices for work done after December, 2001. In his reply brief, Bock's total request was about $218,000. Bock then filed a supplemental request, mostly concerning attorneys
(continued...)

4

the scope of the litigation since June, 2000 has been neither complex nor lengthy, the only explanation for Bock's attorneys fees – which are more than double the fees defendants' attorneys charged for the same time period – is that his attorneys unnecessarily ran up their fees in the hopes that defendants would pay them. Defendants submit that after eliminating fees charged for duplicative and unnecessary work, work unrelated to the lawsuit, and shoddy billing practices, Bock is entitled to no more than $66,246.56 for fees, costs and interest.

As an initial matter, we agree with the defendants that it is proper to read a requirement of reasonableness into the Agreement's section on payment of attorneys' fees. Indeed, the District Court's final judgment order specifically referred to the payment of "reasonable fees". However, our task of interpreting the contract here is different than cases where the award of attorneys' fees is pursuant to a fee-shifting statute, which grants the court wide discretion to determine the fees due to a prevailing party. *See Bowles v. Quantum Chemical Company*, 266 F.3d 622 (7th Cir. 2001) (recognizing the difference between a fee award to a prevailing party in an ERISA action and fees paid pursuant to contract). As the Seventh Circuit stated in *Medcom Holding v. Baxter Travenol Labs.*, 200 F.3d 518, 520-521 (7th Cir. 2000), in determining attorneys' fees to be paid pursuant to a contractual agreement, the court should undertake "an overview of [plaintiff's] aggregate

---

$^{4}$(...continued)
fees for drafting this fee petition, that raised the total amount he is seeking to about $232,000. Defendants do not dispute that Bock is entitled to collect "fees for fees", but as discussed below, they object to the amount claimed. Most of our analysis here concerns the $200,000 Bock claims for work performed prior to December, 2001.

costs to ensure that they were reasonable in relation to the stakes of the case and [defendant's] litigation strategy."

In *Medcom*, the Seventh Circuit went on to hold that "reasonable" fees under the contract at issue were those incurred for work that flowed from the defendant's breach or misrepresentation. In the present case, the contractual language is even more broad, promising that CAI will pay for all of Bock's attorneys' fees if he seeks to enforce his rights under the contract, regardless of his success in upholding those rights. The only limitation is that any attempt to assert rights under the Agreement not be frivolous; there is no requirement that the employee actually succeed in his or her suit.

Here of course, Bock's claim was not frivolous – he won his case twice in District Court. So we are left with defendants' argument that the fees are not reasonable. In *Medcom*, the Court inferred the reasonableness of the fees from the fact that the plaintiff had continued to pay them when the outcome of its case (and thus, defendant's liability to pay), was far from certain. However, that analysis does not fit in this situation. Bock's Agreement entitled him to have CAI pay his attorneys' fees whether or not he was successful, and Bock regularly submitted his attorneys' invoices to CAI throughout the litigation with the expectation that they would be paid whatever the final outcome of the case. Thus, there is more of a concern here than in cases involving indemnity agreements like that in *Medcom* that Bock's lawyers could run up their bills unnecessarily, knowing the ultimate cost would not be borne by their client.

We believe that it is appropriate to conduct a review of Bock's attorneys' fees that is somewhere between the detailed line-by-line discretionary analysis required by a fee-shifting statute and the more general overview contemplated by *Medcom*. Thus, we will

6

consider some of the objections defendants raise in their response brief, going into more detail only where needed.

**The Amount of Bock's Legal Fees are not Per Se Unreasonable**

CAI argues that Bock's legal fees must be unreasonable because they are more than double its own fees for the same time period. We disagree with this unequivocal statement. Had Bock had a standard contingent fee arrangement to pay his lawyers 1/3 of his recovery, the attorneys would have been entitled to nearly twice their actual bills, an amount found reasonable by the Court in other cases. See Kirchoff v. Flynn, 786 F.2d 320, 323 (7th Cir. 1986). Defendants' argument that its own lawyers charged far less is unavailing; defendant does not dispute that its lawyers have defended multiple lawsuits from other CAI employees concerning their severance agreements, a practice that quite possibly created economies of scale not enjoyed by Bock. Bock's first fee award for the first ten months of the lawsuit came to nearly $170,000, which the parties agreed to reduce to $160,000, and which the defendants eventually paid. That Bock's lawyers billed nearly $200,000 for the next eighteen months of work is not unreasonable, especially given that the time period included an appeal and argument before the Seventh Circuit and additional submissions to the District Court after the remand.[5]

**Fees Bock Has Allegedly Already Been Paid or Agreed Not to Seek**

Defendants argue that some of the legal fees sought by Bock were for work performed prior to June, 2000, and thus were covered by the $160,000 CAI has already

---

[5] Defendants also ignore Bock's contention that a portion of the later fees were incurred during his attempt to get CAI to at least pay the base pay component of his award and his pre-June, 2000 attorneys' fees, both of which were eventually ordered by the District Court.

7

paid. Bock explains that the fees he seeks were never before billed, and thus not included in the original $165,157.95 he sought in fees pursuant to the Court's August 16, 2000 order, which the parties eventually settled for $160,000. Defendant does not dispute that Bock never recovered for these fees even though he incurred them prior to June 30, 2000 and thus we find this objection to be without merit. CAI also claims that Bock seeks recovery for fees concerning his November, 2000 motions to partially lift the stay of judgment to compel defendants to provide him with a release, both of which he agreed to withdraw in exchange for payment of the $160,000. Bock does not deny this, but the parties dispute the exact scope of work connected to the two motions that is covered by their settlement. Thus, of the $1,537.5[6] in fees to which defendants object because they are possibly covered by the parties' settlement, the Court will reduce the fees by one-half, or $768.75.

**Fees for Allegedly Unnecessary Legal Work**

The bulk of defendants' objections argue that much of the work of Bock's attorneys was excessive or duplicative. We will not parse defendant's lengthy table of objections to various fees or Bock's even lengthier response; a review of the entries reveals that in many cases, defendant merely objects that certain work was excessive or generally unreasonable.[7] Given Bock's initial and ultimate success in prosecuting the case and the

---

[6] The Court arrived at this figure by taking the $1,977.50 listed in defendants' appendix table 1 and eliminating fees of $440.00, which were not related to the settlement.

[7] Our task of reviewing defendant's specific objections is made more difficult by the fact that instead of referencing specific entries in plaintiff's attorneys' time reports they merely refer the Court generally to tables containing the descriptions of the fees and their objections, expecting the Court to determine which out of hundreds of entries they discuss
(continued...)

8

amount his lawyers ultimately charged, we do not find the overall work performed excessive.[8]

A few of defendants' specific objections deserve discussion. First, defendant objects to paying for motions and claims Bock's attorneys researched and prepared, but did not assert. Defendants mention $5,000 Bock's lawyers charged for analyzing an unasserted claim for compound interest and for calculating pre-judgment interest but do not point out where in the 40-page table of objections they made to Bock's fees these charges appear, so the Court is not certain it reviewed the correct entries for each objection. Even so, we do not believe that the mere fact that some of the work performed by Bock's attorneys was never advanced before the Court renders it non-compensable. The parties spent a considerable amount of time discussing and briefing the question of the correct amount of the final judgment award and it is not unreasonable for Bock's attorneys' to have researched various methods for calculating that award.[9]

---

[7](...continued)
in their brief.

[8] Indeed, some of defendant's objections are rather minor. For example, they object to the 42 minutes one of Bock's attorneys spent reviewing the joint jurisdictional statement defendant had drafted for submission to the Seventh Circuit on appeal. Defendants argue that such "extensive scrutiny" of a document they had drafted was unnecessary.

[9] The cases cited by the defendants on page seven of their brief do not change our analysis. First, both cases, *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999) and *Doden v. Plainfield Fire Protection District*, No. 94 6294, 1996 WL 180073, (N.D.Ill., April 12, 1996), involve the payment of attorneys' fees pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b), a statute which gives the Court wide discretion in shifting the payment of reasonable attorney's fees to the losing party. In both cases – which happened to concern the same plaintiff's attorney – the Court found it unreasonable to order the defendants to pay for activity that was so unnecessary as to border on the frivolous. In this case, where the granting of fees involves less discretion than that ordered
(continued...)

With regard to the $6,620.00 Bock's attorneys spent instituting a separate lawsuit to recover their ongoing fees during the pendency of the appeal, we will reduce the stated fees by a total of $2,706.00. This will account for the fact that Bock's attorneys could have easily filed a motion before Judge Conlon asking that CAI pay Bock's ongoing fees, instead of filing a separate lawsuit that eventually was reassigned to her Court. The hours we are eliminating primarily concern time spent serving the new complaint and researching and discussing the reassignment of related cases ($1,727.50). However, we will allow most of the time spent researching and drafting the complaint to remain. The defendants do not deny that they refused to pay any of Bock's attorneys' fees until they had a court order to do so, despite the clear language of the Agreement obligating them to pay. Thus, the time Bock's attorneys spent actually trying to enforce his rights, whether by new complaint or motion, is generally reasonable, but we will apply a 20% reduction to the remaining $4892.50 because drafting the pleadings required for a new case are somewhat more complicated than a motion for fees would have been. Thus, the fees listed in table 5 of defendants' appendix are reduced by $2,706.00

Defendants again cite to a case concerning statutory fee-shifting under the FLSA (which involved the same plaintiff's attorney as in *Uphoff* and *Doden*) to argue that Bock should not recover attorneys' fees for ministerial tasks that could have been performed by clerical staff. However, in *Spegnon v. Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir.

---

[9](...continued)
pursuant to statute, we cannot say that the work performed by Bock's attorneys was frivolous. In so holding, we note that although the defendants contend that the District Court summarily denied Bock's August 11, 2000 motion to clarify the final judgment, the docket indicates that such motion was granted.

1999), the Court reduced the attorney's hours to a total of three – finding that the dispute could have been settled without filing a lawsuit at all, and similarly eliminated from the bill all administrative work. The Court specifically referred to a prevailing party's duty under fee-shifting statutes to limit the fees charged to an adversary. As we have explained above, the Court's inquiry when assessing attorneys' fees pursuant to statute is different than when the fees are to be paid by contract, as they are here. That some of the work performed by the attorneys could arguably have been performed by clerical staff as well does not render it so unreasonable or unnecessary that it should be stricken from the bill.[10]

Finally, we deny defendants' request that we strike part of the attorneys' fees for the time spent preparing for oral argument before the Seventh Circuit. Given the complexity of the case and the work cited on the bills, we do not find that 36.5 hours spent by attorney Boyle, who argued the case, and the time spent by Bock's other senior counsel in helping to prepare is excessive.[11]

Defendants next object to paying certain fees that they deem unrelated to Bock's enforcement of his rights under the Agreement. After reviewing defendants' individual objections and plaintiff's responses, we find the objections to be without merit. For example, defendants object to paying for time Bock's counsel spent conferring with counsel

---

[10] We note that plaintiff has submitted a response justifying its attorneys's time for each "clerical" expenditure, including the comment that "Defendants improperly assume that all firms have the clerical resources they enjoy."

[11] Defendants' citation to *Charles v. Daley*, 846 F.2d 1057, 1075 (7th Cir. 1988) in support of their argument to reduce oral argument preparation fees is not compelling; in *Charles* the Court found that the 926 hours counsel spent in pre-argument preparation for a high-profile abortion case was in some respects excessive. The amount of time Bock's attorneys spent here does not even begin to approach such amounts.

11

for another former Platinum employee about their lawsuits against defendant for similar contract issues. We find such consultations proper. Defendants also object to the time Bock's attorneys' spent researching service of process and then actually serving process on an officer of defendant; they contend that such actions were harassing and unnecessary. However, defendants do not deny that their attorneys refused to accept service of process on behalf of CAI and that plaintiff informed them ahead of time that it planned to file a citation to discover assets in the face of defendants refusal to pay Bock anything under the Agreement. Defendants other objections are similar in their scope and we do not find any of them significant enough to reduce the award of fees.[12]

**Fees for Fees**

Defendants next object that plaintiff's claim of approximately $35,022.94 in fees to prepare the instant fee petition is excessive.[13] The fee petition amounts to approximately one-tenth of the total fees Bock seeks to recover, and as is obvious from the 119-page chart Bock's attorneys created to respond to each of defendant's individual objections to their bills, most, if not all of the time was necessary. Given that the defendant makes only

---

[12] For similar reasons, we decline to reduce the award based on defendants' objections that plaintiff's attorneys overstaffed the case and employed shoddy billing practices. Given that the defendants at times employed five different attorneys to defend the case, we do not find plaintiff's use of four, including two associates (one of whom did no work while on maternity leave) is unreasonable. And we will not dissect defendants' individual objections to certain time entries as demonstrating overall poor billing. In the few cases where unrelated time was inadvertently billed to this case, plaintiff removed it and his attorneys adequately justified other questioned entries.

[13] We take this amount from defendants' reply to plaintiff's supplemental fee petition without commenting on its accuracy; it is not apparent from the papers exactly how much of plaintiff's claimed fees and expenses stem from the drafting of his fee petitions. Plaintiff's supplemental fee petition, which includes his attorneys' final invoices, appears to relate almost entirely to the fee petitions, and requests an additional $13,896.62.

12

a general objection to the amount of fees and requests a two-thirds reduction in the amount without any specific justification, we do not find that the amount claimed by Bock as "fees for fees" is unreasonable.[14]

**Nontaxable Expenses**

Bock does not respond in his brief to defendants' objections regarding the $7,353.35 he claims in expenses for things such as photocopying, long distance calls, and travel expenses. However, the parties joint submission regarding the final judgment award responds to the objections line by line. Defendants make two major objections, both of which we overrule. First, they argue that they should not be responsible for paying Bock's travel expenses concerned with his appeal because the Seventh Circuit held that each side bear its own costs. However, there is no indication that this order was anything other than the Seventh Circuit's standard method for assigning costs for appeals that had merits on both sides; the Court did not consider the terms of the Agreement. In any event, Bock's means of bearing his own costs would be to submit them to defendants under the Agreement, so we will not reduce or eliminate his expenses for his appeal.

Next, defendants object to paying for any of Bock's long distance, fax, copying, or travel expenses for which he does not have documentation demonstrating that they were incurred for a specific purpose for this case. Fed.R.Civ.P. 54(d) governs the award of fees

---

[14] The cases defendants cite are distinguishable, as they again concern statutory fee-shifting to prevailing parties and not a contractual analysis. *Ustrak v. Faiman*, 851 F.2d 983, 988 (7th Cir. 1988) involved a reduction of attorneys fees for a prisoner rights case where the prisoner prevailed on only one of his six claims and the court held that elimination of some of the meritless claims would have reduced the entire award. *Central States v. Hunt Truck Lines, Inc.*, 133 F.Supp2d 1076 (N.D.Ill. 2000) involved a statutory award of fees that was overturned on appeal, as the Seventh Circuit found that plaintiff's status as a prevailing party was not definite. 272 F.3d 1000 (7th Cir. 2001).

13

and costs to prevailing parties pursuant to statute and requires that requests for reimbursement for costs be properly documented. However, as we explained above, Bock's entitlement to costs and fees is pursuant to his contract with CAI, not pursuant to any fee shifting statute. Nothing in the Agreement requires Bock to submit particular types of documentation with his expenses, and we find both the detail of his attorneys' bills and the amount of costs claimed to be reasonable. Thus, we will not reduce the amount of costs he claims.

**Interest on Bock's Own Fees and Costs**

Defendants object to paying Bock pre-judgment interest of approximately $8,500 because Bock did not actually begin to pay his attorneys any of the fees and expenses he seeks here until November, 2000, and thus was not denied use of the funds for any amount of time. Defendants do not cite any support for their position and it ignores the clear language of the Agreement that pre-judgment interest will be owed on any fees that are not paid by the defendants as they accrue. What is apparent is that some entity – whether Bock or his attorneys does not concern us – was without this money when it was owed, and thus, the award of prejudgment interest is proper.

In his reply memorandum filed February 22, 2002, Bock claimed a total of $218,318.35 in fees, costs, interest and unbilled time and expenses. His supplemental petition requested an additional $13,896.62. Of this, $211,663.83 is principal, which we will reduce by $3,474.75 as set forth above. An additional forty days of interest have

accrued since Bock filed his reply, for a total of $1,462.80 at the rate of $36.57 per day. Thus, Bock's total fee award through April 1, 2002 should be $230,203.02. It is so ordered.

ENTER:

_____
MICHAEL T. MASON
United States Magistrate Judge

Dated:   April 3, 2002